IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN THE MATTER OF THE EXTRADITION )
) Case No. 3:13-mj-2042
OF AVELINO CRUZ MARTINEZ ) Magistrate Judge Knowles

### CERTIFICATION OPINION AND ORDER

This is an extradition proceeding filed by the United States of America on behalf of the United Mexican States ("Mexico"). The United States began this action with the filing of a verified "Complaint for Arrest for Extradition (18 U.S.C. §3184)." Docket No. 3. The United States, acting for, and on behalf of, the government of Mexico, seeks the extradition of Avelino Cruz Martinez, who has been charged with two murders that occurred in Mexico on December 31, 2005.

After considering the entire record in this matter, the relevant treaty, and the applicable standards, the Court CERTIFIES Mr. Cruz Martinez as subject to extradition under 18 U.S.C. §3184. While the Secretary of State makes the ultimate decision on extradition, a lawful basis to extradite Mr. Cruz Martinez exists, as set forth below.

### I. Procedural History

On June 11, 2013, the United States, acting on behalf of the Government of Mexico, filed a verified Complaint to extradite Mr. Cruz Martinez pursuant to 18 U.S.C. §3184 and the "Extradition Treaty Between the United States of America and the United Mexican States," signed May 4, 1978, and entered into force January 25, 1980, T.I.A.S. No. 9656, 31 U.S.T. 5059, 1980 WL 309106 (U.S. Treaty). Docket No. 3. Mr. Cruz Martinez was arrested pursuant to a complaint-based warrant on June 21, 2013. Docket No. 8.

That same day, an initial appearance was held for Mr. Cruz Martinez, and counsel was appointed to represent him. Docket Nos. 9, 11.

The Government filed a Motion for Detention on June 24, 2013. Docket No. 13.

On June 25, 2013, Mr. Cruz Martinez filed a "Motion to Dismiss Complaint and, in the Alternative, to Order Discovery." Docket No. 17. Mr. Cruz Martinez also filed a supporting Memorandum of Law. Docket No. 18. The same day, the Government filed a "Memorandum of Law in Opposition to Bail." Docket No. 19. The following day, June 26, 2013, Mr. Cruz Martinez filed a "Supplemental Authority for Detention Hearing." Docket No. 20-1. The Court subsequently denied the Motion to Dismiss Complaint (Docket No. 51), but granted the Motion for Discovery (Docket No. 29).

The Court convened a Detention Hearing on June 26, 2013, and, for reasons stated on the record during that Hearing, continued the Hearing until July 23, 2013. Docket No. 23. The Court held the Detention Hearing that day. Docket No. 30.

On July 26, 2013, the undersigned entered an Order of Detention as to Mr. Cruz Martinez.[1] Docket No. 33.

On July 3, 2013, Mr. Cruz Martinez filed a Supplemental Motion to Dismiss Complaint and Vacate Warrant. Docket No. 25. The Court subsequently denied that Motion. Docket No. 51.

Pursuant to Article 10 of the Treaty, the Government filed an "Extradition Packet and

---

[1] Mr. Cruz Martinez sought review of the undersigned's Detention Order in a Habeas Corpus action filed in this Court. *Avelino Cruz Martinez v. United States*, Case No. 3:13-00638, United States District Court for the Middle District of Tennessee. Judge Trauger entered an Order in that case providing that Mr. Cruz Martinez "shall remain in detention pending further order of the court." Docket No. 15, in Case No. 3:13-00638.

Exhibits One through Fourteen" on August 30, 2013. Docket Nos. 46, 46-1 through 46-15.

On October 7, 2013, Mr. Cruz Martinez filed a "Supplemental Motion to Dismiss and Motion for Discovery." Docket No. 49. The Court subsequently denied that Motion. Docket No. 51.

On November 15, 2013, Mr. Cruz Martinez filed a "Motion to Deny Certification for Extradition." Docket No. 53. The Court subsequently denied that Motion. Docket No. 62.

The Court ultimately held the Extradition Hearing on December 13, 2013. Docket No. 61 (Extradition Hearing Transcript). Neither side presented any proof at the Extradition Hearing. The Court did, however, receive two Exhibits offered by the Government without objection: Exhibit 1, the Declaration of Julie B. Martin and accompanying documents, and Exhibit 2, a certificate of the Honorable Earl Anthony Wayne, United States Ambassador to Mexico, dated August 9, 2013, and accompanying documents. The Court notes that approximately half of Hearing Exhibit 2 appears to be the original of the documents filed in this Court on August 30, 2013 (Docket Nos. 46-1 through 46-15).[2] The other approximately half of Hearing Exhibit 2 appears to be a Spanish translation of the first half of Hearing Exhibit 2. The pages of the documents filed in the record are paginated, while the pages of Hearing Exhibit 2 are not. Therefore, the Court will refer to Docket Nos. 46-1 through 46-15 when necessary, rather than

---

[2] The documents contained in Hearing Exhibit 2 are identical to the documents contained in Docket Nos. 46-1 through 46-15. There is, however, a slight difference in the order of the documents between the two. Docket No. 46-2 is the third through fourteenth unnumbered pages of Exhibit 15 to Hearing Exhibit 2. Docket No. 46-14, p. 6 is the fourth unnumbered page of Exhibit 13 to Hearing Exhibit 2.
    Additionally, the Court notes that three pages of photographs, namely Docket No. 46-14, p. 6 and Docket No. 46-15, p. 2-3, are photographs which are much clearer in Hearing Exhibit 2 than they are in the documents filed with the Clerk on August 30, 2013.

Hearing Exhibit 2.

## II. The Controlling Statute and the Certification Requirements

The applicable extradition statute, 18 U.S.C. §3184, provides in relevant part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government . . . any justice or judge of the United States, or any magistrate judge authorized to do so by a court of the United States . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention . . . issue his warrant for the apprehension of the person so charged, that he may be brought before such judge, justice or magistrate judge, to the end that the evidence of criminality may be heard and considered. . . . If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . . he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

Thus, there are only four requirements set out on the face of the statute itself: (1) a complaint made under oath, (2) charging a person, (3) found within the jurisdiction of a justice or judge of the United States, (4) with having committed a crime provided for by the Treaty or Convention within the jurisdiction of the foreign government. Such a person may then be brought before a justice or judge of the United States so that the evidence of criminality may be heard and considered. If as a result of such hearing, the justice or judge "deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . . he *shall* certify the same, together with a copy of all the testimony taken before him, to the Secretary

4

of State...." 18 U.S.C. §3184 (emphasis added).

The court listed a similar set of requirements in *In the Matter of the Extradition of Monika Kapoor*, 2012 WL 1318925 (E.D. N.Y.):

> At an extradition hearing, the judicial officer's inquiry is confined to the following: whether a valid treaty exists; whether the crime charged is covered by the relevant treaty; and whether the evidence marshaled in support of the complaint for extradition is sufficient under the applicable standard of proof.

*Id.* at *2 (citations and internal quotation marks omitted).

Some treaties, such as the one in the case at bar, contain additional requirements that, while not necessarily required by the language of §3184, seem logical and reasonable. For example, the Treaty at issue contains the following language:

> Extradition shall take place, subject to this Treaty, for willful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall not be less than one year.

Article 2, ¶ 1.

In considering the language of the Treaty, the Court is mindful of two principles. First, the terms of an extradition treaty should be liberally construed so as to effect the intention of the parties to secure the open and reciprocal surrender of fugitives to be tried for extraditable offenses. *In Re Rodriguez Ortiz*, 444 F.Supp.2d 876, 883 (N.D. Ill. 2006) *citing Factor v. Laubenheimer*, 290 U.S. 276, 293-94 (1933). Second, "while the interpretation of a treaty is a question of law for the courts, given the nature of the document and the unique relationships it implicates, the Executive Branch's interpretation of a treaty is entitled to great weight." *Swarna v. Al-Awadi*, 622 F.3d 123, 133 (2nd Cir. 2010) *quoting Abbott v. Abbott*, 560 U.S. 1, 15 (2010).

5

There is no controlling authority in the Sixth Circuit that sets forth the precise requirements for certification under §3184 and case law. Several other courts, however, have addressed this issue. In *In the Matter of the Extradition of Alex Suyanoff*, 2012 WL 4328523 (E.D. N.Y.), the court stated:

> In an extradition proceeding, the court's role is only to determine whether: (1) the individual arrested is the individual sought; (2) the offenses charged are extraditable; (3) the requirement of "double criminality" is satisfied; (4) there is probable cause to believe the individual committed the offenses charged; (5) the required documents have been presented, translated, and duly authenticated by the United States Consul; and (6) all other treaty procedures have been followed.

*Id.* at *2 (citations omitted).

The court in *In Re the Extradition of Raul Mejia Vazquez*, 2012 WL 843746 (E.D. Cal.), stated:

> To obtain a certification of extraditability on behalf of a requesting state, the United States has the burden of demonstrating each of the following elements: (1) the court possesses subject matter jurisdiction to conduct extradition proceedings; (2) the court possesses personal jurisdiction over the person named in the extradition request; (3) a valid extradition treaty exists between the requesting state and the United States, which is, at all relevant times has been [*sic*] in full force and effect; (4) the person named in the extradition request is charged with having committed a criminal offense within the jurisdiction of the requesting state and the charged offense is extraditable under the relevant extradition treaty (that is, the offense charged falls within the terms of the relevant extradition treaty); (5) there is competent evidence establishing probable cause to believe that the person named in the extradition request committed the charged offense; and (6) the person named in the extradition request is the person arrested and brought before the court.

*Id.* at *1.

Finally, in *In re Extradition of Azara Basic*, 2012 WL 3067466 (E.D. KY), the court considered the following factors: (1) whether the court was authorized to conduct the extradition proceeding; (2) whether the court had jurisdiction over the extraditee; (3) whether the treaty or treaties are and were in full force and effect; (4) whether the extraditee is the person named as the extradition target in the complaint; and (5) whether the complaint charges the extraditee with a crime or crimes that fall within the scope of the treaty's extradition ambit. *Id.* at *3-4.

### III. Analysis

The list of factors set forth in *Vazquez* appears to be the most complete, and the Court will consider below whether the United States has demonstrated the elements listed in *Vazquez*.

First, there is no question that this Court possesses subject matter jurisdiction to conduct the extradition proceeding. As set forth in §3184, quoted above, any magistrate judge "authorized to do so by a court of the United States" may issue a warrant for the apprehension of the extraditee, may conduct a hearing, and may certify that the person is extraditable. Local Rule 72.01(a) provides:

> Magistrate Judges are authorized and designated to exercise all jurisdiction expressly permitted by law and not inconsistent with Article III of the United States Constitution. Magistrate Judges also may determine any preliminary matters and conduct any necessary evidentiary hearings or other proceedings arising in the exercise of their jurisdiction. This Rule shall be construed broadly to fully implement the authority of Magistrate Judges in the District under the order of reference.

Moreover, 28 U.S.C. §636(a) confers on magistrate judges "all powers and duties conferred or imposed upon United States commissioners by law. . . ." Prior to the enactment of that statute, extradition proceedings were conducted by commissioners. *See* Pub. L. No. 90-578,

§301(a), 82 Stat. 1108 (1968)(substituting "magistrate" for "commissioner" in §3184). *See generally, Noel v. United States*, 12 F. Supp. 2d 1300, 1305 (M.D. Fla. 1998).

Thus, the undersigned and this Court have the authority to conduct an extradition proceeding and hearing.

Second, the Court possesses personal jurisdiction over Mr. Cruz Martinez. Mr. Cruz Martinez was arrested in the Middle District of Tennessee. He has appeared at each Court proceeding in this District, including the Extradition Hearing. Additionally, Mr. Cruz Martinez is being detained pursuant to Orders of this Court.

Third, the Government has submitted the Declaration of Julie B. Martin, an Attorney Adviser in the Office of the Legal Adviser for the Department of State in Washington, D.C. Hearing Ex. 1. The Declaration provides in relevant part:

> The relevant and applicable treaty provisions in full force and effect between the United States and Mexico are found in the Extradition Treaty between the United States of America and the United Mexican States of May 4, 1974 (TAIS 9656).

*Id.*, ¶ 3.

Therefore, the Treaty provisions are in full force and effect.[3]

Fourth, Article 2 of the Treaty provides in relevant part:

> 1. - Extraditions shall take place, subject to this Treaty, for willful acts which fall within any of the clauses of the Appendix and are punishable in accordance with the laws of both Contracting Parties by deprivation of liberty the maximum of which shall be not less than one year.

Ms. Martin's Declaration establishes:

---

[3] Ms. Martin has also attached a copy of the Treaty to her Declaration. *Id.*

8

> The offense for which extradition is sought is punishable in accordance with the laws of both contracting parties by deprivation of liberty for a period of at least one year, and is covered under Article 2 of the Extradition Treaty between the United States of America and the United Mexican States of May 4, 1978.

*Id.*, ¶ 5.

As discussed above, on August 30, 2013, the Government filed an "Extradition Packet" with accompanying Exhibits. Docket Nos. 46-1 through 46-15. The Exhibits to the "Extradition Packet" contain the Arrest Warrant and citations to the applicable Mexican penal codes. The Exhibits indicate that Mexico requests the extradition of Mr. Cruz Martinez for two counts of the crime of aggravated homicide with undue advantage.

The Treaty Appendix includes the crimes of murder or manslaughter. The following are relevant provisions of the Criminal Code of the state of Oaxaca:

> Article 285. The offense of murder is committed by those who take another's life.
>
> Article 291. Those who commit aggravated murder shall be imprisoned from 30 to 40 years.
>
> Article 299. Bodily injuries and murder are aggravated by the following circumstances: if committed by premeditation, unfair advantage, lying in wait or perfidy.
>
> Article 301. Unfair advantage materializes:
>
> . . .
>
> II. If the perpetrator is superior by the weapons they use, by a greater skill in the use of such weapons, or by the number of individuals in their company.

Docket No. 46-4, p. 3.

As will be discussed in greater detail below, there is probable cause to believe that Mr.

Cruz Martinez committed the offense of murder by taking the lives of Francisco Solano Cruz and Antolin Cruz Reyes. Those murders were aggravated by the circumstance of premeditation, and unfair advantage was present in that Mr. Cruz Martinez was "superior by the weapons" he used.

Fifth, there is probable cause to believe that Mr. Cruz Martinez committed the crimes for which his extradition is sought. At the Extradition Hearing, counsel for Mr. Cruz Martinez conceded that probable cause had been established. He stated:

> As for the basics, I guess I should state expressly that we do concede that the documents establish probable cause, and we haven't contested that in our papers. I would think that would be obvious at this point.

Docket No. 61, p. 5.

There is ample evidence to support Mr. Cruz Martinez's concession. That evidence, which is set forth in the Exhibits to the Extradition Hearing, was summarized as follows in the verified Complaint:

> 5. According to the information provided by the requesting state in the form authorized by the extradition treaty, AVELINO CRUZ MARTINEZ (hereinafter "CRUZ MARTINEZ"), is charged in the State of Oaxaca with Aggravated Homicide with Undue Advantage, as described by Articles 285 in accordance with Article 8, Section I, Article 299 and Article 301, Section II and punishable under Article 291 of the Penal Code of the State of Oaxaca. On February 23, 2006, the Judge of the First Instance for Civil and Criminal Matters in the District of Silacayoapan, Oaxaca, issued an arrest warrant for CRUZ MARTINEZ, as part of criminal case number 06/2006.
>
> 6. As set forth in Diplomatic Note 03219 dated May 21, 2012, the facts of the case for which extradition is sought are as follows:
>
>> On December 31, 2005, in Santa Maria Natividad, Ixpantepec Nieves, Silacayoapan, Oaxaca, Mexico, CRUZ MARTINEZ, a Mexican national, shot and killed Samuel

10

Francisco Solano Cruz and Antolin Cruz Reyes with a firearm.

On January 16, 2006, Esteban Solano Mendez (hereinafter "Solano Mendez"), an eyewitness to the crime, provided a sworn statement to authorities wherein Solando Mendez stated that on December 31, 2005, he was at his cousin Samuel Francisco Solano Cruz's (hereinafter "Solano Cruz") house making preparations for a January 1, 2006 breakfast that would be prepared for town authorities, musicians, family and friends. Between 7:00 p.m. and 8:00 p.m., Solano Cruz asked Solano Mendez to accompany him to the Municipal Agency in order to deliver the invitation for the breakfast. Solano Mendez agreed to go, and they headed to the center of town in Solano Cruz's red Nissan pick-up truck.

When they arrived, the main entrance to the Municipal Agency was blocked by a band playing music. Solano Mendez and Solano Cruz entered through the church atrium and could see memebers of the community and the town's authorities sitting on small stands. Solano Mendez stated that the noticed a red Ford Ranger pick-up truck with a red camper near the stands. The pick-up truck had a Texas license plate, and they knew it belonged to CRUZ MARTINEZ who was sitting in the stands.

Solano Cruz parked his pick-up truck to the side of the stands and they exited the truck. Both Solano Mendez and Solano Cruz then walked over to the stands in order to sit with the authorities to take advantage of the opportunity to invite them to the breakfast. Once CRUZ MARTINEZ saw Solano Mendez and Solano Cruz arrive, he walked over to his pick-up truck and moved it, parking the front of Solano Cruz's truck, facing the entrance of the church. Solano Mendez then noticed that CRUZ MARTINEZ get out [sic] of his pick-up truck, but he did not turn off the ignition. CRUZ MARTINEZ then walked towards the grandstands where Solano Mendez and Solano Cruz were sitting.

Solano Mendez stated that CRUZ MARTINEZ approached Solano Cruz and stretched out his hand to greet him. When Solano Cruz shook his hand, CRUZ MARTINEZ pulled Solano Cruz with one hand and drew a firearm from a holder on his hip with his other hand. CRUZ MARTINEZ then shouted "Son of a bitch" and shot Solano Cruz. Antolin Cruz Reyes (hereinafter "Cruz Reyes"), who was sitting in the second stand, grabbed a hold of Solano Cruz in order to help him. However, Cruz Reyes was also shot by

11

> CRUZ MARTINEZ. CRUZ MARTINEZ then got into his pick-up
> truck and fled the scene. Solano Cruz was taken to the hospital in
> the town of Santiago Juxlahuaca, Oaxaca, but died on the way.
> Cruz Reyes was also taken to the hospital, but died on January 9,
> 2006, due to the gun shot wound.
>
> Solano Mendez's statement to the authorities was
> corroborated by a statement provided by Hipolito Felipe Cruz
> Perez (hereinafter "Cruz Perez"), a town Alderman and eyewitness
> to the shootings.
>
> In identification proceedings conducted by the authorities
> from Oaxaca, both Solano Mendez and Cruz Perez identified
> CRUZ MARTINEZ from a photo array as the individual who shot
> and killed Solano Cruz and Cruz Reyes on December 31, 2006
> [*sic*].

Docket No. 3, p. 1-4.

Sixth, the physical description and photographs of Mr. Cruz Martinez in the Extradition Packet are competent evidence upon which identity may be established. *See, e.g., Glucksman v. Hinkel*, 221 U.S. 508, 513 (1911) (finding that photographs of the fugitive provided by the requesting state may be used to make an identity determination in international extradition matters). The Court has reviewed the photographs of Mr. Cruz Martinez, and concludes that the person being sought for prosecution pursuant to the Request for Extradition is the person in custody, who is known to the Court as Avelino Cruz Martinez. Therefore, there is probable cause to believe that the person before this Court is the person named in the extradition request and accompanying documents. Furthermore, Mr. Cruz Martinez has not contested his identity as the person accused of the crimes for which extradition is sought.

Finally, the formal papers and documents in support of Mexico's request for the extradition of Mr. Cruz Martinez are and have been presented in accordance with the laws of

United States of America and the Treaty, and have been translated and authenticated in the manner required by the Treaty.

### IV. Conclusion

For the foregoing reasons, the Court hereby CERTIFIES the above findings to the Honorable John F. Kerry, Secretary of State of the United States of America, pursuant to 18 U.S.C. §3184.

It is hereby ORDERED that a certified copy of this Certification Opinion and Order and the hearing transcripts (Docket Nos. 23, 34, and 61) be delivered by the Clerk to the Assistant United States Attorney assigned to this case for transmission to the Secretary of State.

It is further ORDERED that Mr. Avelino Cruz Martinez be committed to the custody of the United States Marshal for this District pending final disposition of this matter by the Secretary of State and surrendered to designated agents of the Government of Mexico, at which time the extraditee, Mr. Avelino Cruz Martinez, will be transferred to the agents of the requesting state for return to Mexico.

IT IS SO ORDERED.

_____
E. Clifton Knowles
United States Magistrate Judge